**PRICE et al. v. SERVICE BUREAU, Inc., et al.**

No. 5430.

Court of Civil Appeals of Texas. Amarillo.

Oct. 12, 1942.

Rehearing Denied Nov. 16, 1942.

Smith & Smith, of Anson, for appellants.

E. M. Davis and J. C. Darroch, both of Brownwood, for appellees.

STOKES, Justice.

This is an appeal by Docia Price and husband, C. E. Price, from the final judgment of the District Court of Kent County, dissolving a temporary injunction theretofore granted by the court, enjoining the sale

by the sheriff of 869.9 acres of land under executions issued out of the County Court of Brown County upon two judgments in favor of appellees, Service Bureau, Inc., and Walker Smith Company, a corporation, against appellant, C. E. Price, and foreclosing abstract of judgment liens and an attachment lien on 457 acres of the tract. The record reveals that A. W. Liming owned the entire tract of 869.9 acres and upon his death in 1918, it descended by inheritance to his six daughters, share and share alike. Appellant, Docia Price, one of the daughters, purchased the interests of two of her sisters and paid the consideration therefor out of her separate means and estate. James B. Day purchased the interests of the other three sisters. As a result of these transactions appellant, Docia Price, and James B. Day became the owners of the entire tract, each owning an undivided one-half interest therein, subject to $990.40 of the original purchase price of a portion of it that was still due the State of Texas. In a suit for partition between them in March, 1930, four hundred fifty-seven acres of the tract were set apart to James B. Day and 412.9 acres were set apart to Mrs. Price. On March 13, 1930, by general warranty deed, James B. Day and wife conveyed to appellants, C. E. Price and wife, Docia Price, the 457 acres that had been set apart to him in the partition suit for a recited consideration of $3,900, of which, the deed recites, $1,500 was paid in cash and the balance evidenced by one note in the sum of $1,000 due October 1, 1930, and four notes of $350 each, due October first of the years 1931 to 1934, inclusive, all executed by both of the appellants and payable to James B. Day.

On April 2, 1940, appellee, Service Bureau, Inc., recovered in the County Court of Brown County a judgment against appellant, C. E. Price, for $405.64, and on May 21, 1941, appellee, Walker Smith Company, recovered a judgment in the County Court of Brown County against C. E. Price for the sum of $615.52. Abstracts of these judgments were issued filed, duly recorded, and indexed in the abstract of judgment lien records of Kent County. It seems that an execution issued on the judgment in favor of Service Bureau, Inc., and before a final judgment was rendered in the Walker Smith Company cause in the County Court of Brown County, an attachment was issued and both the execution and writ of attachment were levied by the sheriff of Kent County on the entire 869.9 acres. The instant suit originated by the petition of appellants in which they sought an injunction against sales under these writs, but by amended pleadings the issues in the case were reduced to the question of whether the land belonged to Mrs. Price as her separate property and estate or was the community property of her and her husband, C. E. Price.

The case was submitted to the court without the intervention of a jury, and the court found that the 412.9-acre tract belonged to Mrs. Price in her separate right and that the 457-acre tract purchased from James B. Day was the community property of appellants. The temporary injunction was therefore dissolved in so far as it affected the 457-acre tract, and the abstract of judgment liens in favor of appellees were foreclosed.

Appellants duly excepted to the judgment and have brought the case to this court upon a number of assignments of error which we do not deem it necessary to discuss in detail, their principal contention being that all of the land involved was the separate property of Mrs. Price and that the court erred in subjecting any portion of it to the payment of judgments against the husband, C. E. Price.

There is no contention that the court below erred in holding that the 412.9-acre tract belonged to Mrs. Price as her separate property. The contention of appellants is confined, therefore, to the ruling of the court that the 457-acre tract was community property and therefore subject to the abstract of judgment liens. Mrs. Price claims the land as her separate property under two deeds, the first one being the deed from James B. Day to her and her husband, above-mentioned, and the second being a deed executed by her husband, C. E. Price, on May 29, 1930, in which he purported to convey to her all of his interest in the entire 868.9 acres. Appellants contend that although the deed of James B. Day and wife recited the cash portion of the consideration for the 457 acres was paid by the grantees, C. E. Price and wife, Docia Price, and the notes for the deferred payments were executed by them and the conveying clause, the habendum clause, and warranty clause all named both of the appellants as the grantees, the facts are that the purchase price of that tract was paid out of the separate funds and estate of Docia Price, and it was agreed by all of the parties at the time the deed was ex-

ecuted by Day and wife that the land was conveyed as the separate property of Mrs. Price. They assert that, therefore, regardless of the recitations in the deed, the effect of the conveyance was to place the title in her as her separate property. The court found, however, that none of the purchase price was paid out of her separate estate and that at the time the deed was executed there was no bona fide intention that the consideration would be paid out of her separate estate.

The rule is well established in this State that when land is conveyed to the husband and wife jointly, or to either of them, during coverture, it presumptively becomes community property. It is also well settled by many decisions of our courts that, regardless of whether the land is conveyed to the husband or wife, or to both of them, it becomes the separate property of the husband, or wife, if the entire consideration is paid out of his, or her, separate estate. Where deferred payments of all or a portion of the consideration are provided, it still becomes the separate property of one or the other if the cash payment, if any, is paid out of his, or her, separate estate and it is agreed at the time by all of the parties to the deed that the deferred portion of the purchase price shall be paid out of his, or her, separate funds and that they alone shall be held responsible for the discharge of the deferred payments. Gleich et al. v. Bongio et al., 128 Tex. 606, 99 S.W.2d 881; Foster v. Christensen, Tex.Com.App., 67 S.W.2d 246; Solether et al. v. Trinity Fire Ins. Co., 124 Tex. 363, 78 S.W.2d 180.

To effectuate a separate estate in land so conveyed, however, the agreement that the separate estate alone shall be looked to for the discharge of the deferred payments must be made by all of the parties to the deed. This includes the grantor as well as the grantee, or grantees, therein. The mere intention or agreement of the husband and wife cannot convert property purchased with an obligation binding upon the community into the separate estate of either spouse. As said by Judge Hickman, speaking for the Supreme Court in Gleich et al. v. Bongio et al., supra, "To accomplish that purpose the vendor must have agreed with the vendee to look only to his or her separate estate for the satisfaction of the deferred payments." [128 Tex. 606, 99 S.W.2d 884.]

As we have said, the deed executed by James B. Day and wife, conveying the 457-acre tract, recited a consideration of $3,900 paid and secured to be paid by C. E. Price and wife, Docia Price. It recited a cash payment of $1,500 and the notes executed for the deferred payments were signed by both of them. The deed conveyed the land to C. E. Price and wife, Docia Price, and it contained no statement or indication of any kind that the property was conveyed as the separate property of Mrs. Price. The testimony does not bear out the contention of appellants that the parties to the transaction agreed at the time the deed was made that the property was being conveyed as the separate property of Mrs. Price. C. E. Price testified that his wife made an effort to procure a loan from the Federal Land Bank on the 412.9 acres which she owned before they acquired the balance of the tract, but that the Federal Land Bank would not advance a loan upon that tract alone. He said when she failed to procure the loan on the smaller tract she bargained with Mr. Day to purchase the 457 acres in order that she might procure a loan on the entire tract, and the record shows that a loan of $3,900 was afterwards procured from the Federal Land Bank on the entire tract. He said that at the time the 457-acre tract was purchased, he and his wife, Docia Price, had an agreement to the effect that the land when purchased would belong to Mrs. Price and that Mrs. Price was to buy the land from Day, procure a loan on the entire 869.9-acre tract, and, with the proceeds of that loan, pay James B. Day the consideration for the 457 acres, which, in reality, was $1,000, instead of $3,900 as recited in the deed. Mrs. Price testified, substantially, to the same facts, and James B. Day testified that at the time he sold the 457-acre tract to appellants he understood he was selling it to Mrs. Price. The testimony further shows that the deed to Mrs. Price from her husband was executed after the land was purchased from Day, but before the loan was procured from the Federal Land Bank. The deed of trust and note to the Federal Land Bank were signed, however, by both of the appellants and the cheque issued by the Federal Land Bank for the proceeds of the loan was made payable to Docia Price and James B. Day. The trial court found that this testimony did not establish the essential agreement between the parties to the transaction and,

in this, we think he was correct. The most that can be deducted from it is that it was understood between C. E. Price and his wife that Mrs. Price would purchase the land and that Day understood she was purchasing it. It is nowhere shown that James B. Day conveyed it as the separate property of Mrs. Price, nor that he ever agreed to look only to her separate estate for the payment of the vendor's lien notes which were executed as evidence of the deferred payments.

Appellants strenuously contend that the land having been conveyed by Day as the separate property of Mrs. Price, the fact that no cash was paid to Day at the time out of her separate estate does not prevent the transaction from resulting in a conveyance as her separate estate. They say, in this connection, that if the land became her separate property, then she had the right to mortgage it to the Federal Land Bank and, by that means, to procure money with which to pay for it and it would still be her separate property. As an abstract proposition of law, this contention may be correct, but the essential facts are not present in this case to establish a separate title conveyed by Day. While Day seems to have understood that no money whatever would be paid to him as consideration for the land until the loan had been procured from the Federal Land Bank, yet the testimony shows that his deed was filed and recorded in the deed records of Kent County on March 14, 1930, the day following its execution. While the deed seems to have been placed in the bank after it was recorded, as a kind of escrow until the loan was closed, yet, during the time intervening, which was approximately four years, the consideration for the land stood as the community debt and obligation of C. E. Price and his wife. Regardless of Day's understanding concerning the source from which the consideration would come, and his understanding that Mrs. Price was purchasing the land, it was community property by virtue of the recitals in the deed and the fact that the purchase price was paid by a community obligation. Not only were the deferred notes a community obligation, but they were discharged by the proceeds of the loan which was likewise a community obligation. There being no agreement between James B. Day, the vendor, and appellants, the joint grantees, that the land was conveyed as the separate property of Mrs. Price, nor that the vendor's lien notes would be paid out of her separate estate, the contention here made by appellants must be overruled.

■ Appellants make the further contention that, regardless of the effect of the deed from James B. Day and wife, the land became the separate property of Mrs. Price under the deed of May 29, 1930, from her husband. This deed recited a consideration of $5,219.40, of which amount $3,-619.40 was declared in the deed to have been paid in cash and the balance of the consideration was evidenced by the assumption by Mrs. Price of $1,100, due the State of Texas as orginal purchase money, and the assumption of five notes for $100 each, executed by C. E. Price and payable to Nellie Kelly. The testimony shows that no consideration whatever was paid by Mrs. Price to her husband for this conveyance. The court found that no consideration was paid and that there was no bona fide intention at the time the deed was executed that the consideration would be paid out of the separate estate of Mrs. Price. The effect of the conveyance was therefore an attempted gift. The court further found that at the time the deed was executed, C. E. Price was insolvent; that the indebtedness of appellees, Walker Smith Company and Service Bureau, Inc., had at that time accrued; and that the deed was made for the purpose of hindering, delaying, and defrauding the creditors of C. E. Price. The court further found, and the testimony shows, that about the first of September, 1930, C. E. Price and his father, who were partners in a retail grocery business, made an assignment for the benefit of their creditors, and the testimony shows that the deed conveying the land to his wife, although dated May 29, 1930, was not filed for record until sometime in August, 1930, only a few days before the assignment for the benefit of creditors was executed. C. E. Price testified that he listed all of the property he owned when he made the assignment for the benefit of his creditors, and the testimony concerning the value of this property shows that at the time the deed was made to Mrs. Price, C. E. Price did not have sufficient property remaining in his hands to pay his debts. The court was therefore warranted in his conclusion that Price was insolvent and, under the provisions of Article 3997, R.C.S.1925, the deed was void. The court so found, and we think his finding is amply supported by the testimony.

We have examined all of the assignments made and points raised by appellants, and, in our opinion, no error is shown. The judgment of the court below will therefore be affirmed.