**W. R. HUGHES and Lilla Long Hughes,
Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 2815.**

United States District Court
E. D. Texas,
Tyler Division.
July 26, 1961.

Allen E. Pye, E. Taylor Moore, Tyler, Tex., for plaintiffs.

Joe Tunnell, U. S. Atty., Lloyd W. Perkins, Asst. U. S. Atty., Tyler, Tex., William M. Ravkind, Washington, D. C., for defendant.

SHEEHY, Chief Judge.

This is an action for refund of Federal income taxes assessed against and paid by the Plaintiffs, husband and wife, for the years 1954, 1955 and 1956. The Court has jurisdiction under the provisions of 28 U.S.C.A. § 1346(a). The pertinent facts, most of which were stipulated, are as hereinafter stated.

Plaintiffs were married on August 18, 1931, and have never been divorced. Plaintiffs timely filed their joint individual income tax returns for each of the three years involved herein and paid the taxes shown due thereon. The Commissioner of Internal Revenue, hereinafter referred to as Commissioner, determined that additional taxes in the amount of $21,021.90 were due for the year 1954, which amount, together with interest in the amount of $4,774.85, was paid by Plaintiffs on or about January 27, 1959. For the year 1955 the Commissioner determined that additional taxes in the amount of $18,885.54 were due. Said additional taxes, together with interest, were paid by the Plaintiffs as follows: on September 17, 1958, taxes of $1,352.-20 plus interest of $197, and on January 27, 1959, taxes of $17,533.34 plus interest of $2,930.47. The Commissioner determined that for the year 1956 additional taxes in the amount of $7,784.22 were due. These additional taxes, with interest, were paid by Plaintiffs as follows: on September 17, 1958, taxes of $7,334.42 plus interest of $628.20, and on January 27, 1959, taxes of $449.80 plus interest of $48.19. Plaintiffs timely filed claims for refunds of the additional taxes and interest paid, and each of said claims was disallowed and thereafter Plaintiffs timely instituted this suit.

The additional taxes assessed against the Plaintiffs were assessed by the Commissioner because he disallowed deductions made by Plaintiffs for attorneys' fees and related expenses paid by W. R. Hughes in connection with two divorce actions instituted by Mrs. Hughes and hereinafter mentioned.

On August 28, 1953, the Plaintiff, Lilla Long Hughes, instituted a suit against the Plaintiff, W. R. Hughes, seeking a divorce. In her petition she alleged that she and W. R. Hughes owned a community estate consisting of real and personal property of a value in excess of a million dollars. In addition to praying for a decree of divorce, Lilla Long Hughes prayed that W. R. Hughes be required to return into the court an inventory and appraisement of all of the property accumulated by him since August 18, 1931; that a writ of injunction issue restraining the said W. R. Hughes from disposing of any part of said property or from contracting for any debts on account thereof; that upon the decree of divorce being granted there be an equitable partition of the community property of W. R. Hughes and herself. On August 28, 1953, the District Court of Gregg County entered in said cause an order ordering W. R. Hughes to file within 20 days a complete inventory, under oath, of all property, real, personal or mixed, within his possession or under his control which had been accumulated since August 18, 1931. In that proceeding Lilla Long Hughes, through her attorneys, contended that practically all of the property, both real and personal, acquired by W. R. Hughes after August 18, 1931, was community property. On April 8, 1954, that action or proceeding, on motion of Lilla Long Hughes, was dismissed.

On August 25, 1954, Lilla Long Hughes instituted another suit in the District

Court of Gregg County, Texas, seeking a divorce from W. R. Hughes and a judgment for her one-half of all of the community property of W. R. Hughes and herself. In that action she further prayed for the appointment of an auditor to audit the records of W. R. Hughes and herself and for a restraining order restraining W. R. Hughes from selling, transferring, withdrawing, encumbering or otherwise hypothecating any of the property, real, personal or mixed, in his possession and under his control. On August 25, 1954, the restraining order as prayed for was granted. In the second action Lilla Long Hughes contended as she did in the first divorce action that practically all of the property, real and personal, acquired by W. R. Hughes subsequent to her marriage to W. R. Hughes was community property of W. R. Hughes and herself. On September 14, 1956, the second divorce action was dismissed on motion of Mrs. Hughes.

The Plaintiff, W. R. Hughes, did not oppose either of the above mentioned divorce actions insofar as Mrs. Hughes sought a divorce, but he did oppose most strenuously Mrs. Hughes' claims and contentions that most or all of the property acquired by W. R. Hughes subsequent to his marriage to Mrs. Hughes was community property.

As a direct result of the two divorce actions instituted against him by Mrs. Hughes, W. R. Hughes incurred and paid attorneys' fees and related expenses during the year 1954 in the amount of $33,877.50, during the year 1955 in the amount of $26,200 and during the year 1956 in the amount of $10,010.50. Of said attorneys' fees and related expenses incurred and paid by W. R. Hughes the following amounts were allocated to the property rights issue that was presented in the two cases: for the year 1954 the sum of $33,067; for the year 1955 the sum of $23,580 and for the year 1956 for the sum of $9,009.45. The parties stipulated that these amounts so allocated to the property rights issue were reasonable and proper. In the income tax returns filed by the Plaintiffs for the years in question the Plaintiffs claimed as deductions said attorneys' fees and related expenses allocated to the property rights issue. The Commissioner disallowed these deductions, and it is because of such disallowances that the additional income taxes, with interest, were paid by the Plaintiffs for those years, and it is those additional taxes and interest that Plaintiffs seek to recover herein.

The Plaintiffs contend that said attorneys' fees and related expenses paid by Mr. Hughes were ordinary and necessary expenses incurred for the production or collection of income or for the management or conservation of property held for the production of income within the meaning of Section 212 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 212). The Defendant, on the other hand, contends that said fees were either nondeductible personal expenditures or nondeductible capital expenditures.

During the pendency of the divorce actions there was standing in the name of W. R. Hughes a vast amount of properties which had been acquired after his marriage to Mrs. Hughes. Among these properties were some corporate stocks, a number of saving and loan certificates and a rather substantial amount of municipal bonds, but the bulk of the property standing in the name of Mr. Hughes were royalty interests in oil and gas mineral estates. Most of these properties were income producing. At the time of his marriage to Mrs. Hughes, Mr. Hughes owned certain properties, including royalty interests in oil and gas mineral estates, which properties during the period from August 18, 1931, to June 30, 1956, produced income to W. R. Hughes in excess of $1,500,000. The major portion of the properties standing in the name of W. R. Hughes at the time of the divorce actions and that was acquired by him after his marriage to Mrs. Hughes was the separate properties of Mr. Hughes. The income on that separate property from August 18, 1931, to June 30, 1956, exceeded the sum of $3,800,000. During the same period of time the income from properties which constituted the com-

**40**

munity property of Mr. and Mrs. Hughes was only the sum of $456,489.82.

Under the provisions of Articles 4613 and 4614, Vernon's Texas Civil Statutes, Annotated, all property of a spouse, both real and personal, owned or claimed by him or her before marriage and acquired afterwards by gift, devise or descent, as also the increase of all lands thus acquired, is the separate property of the spouse. All property acquired by either husband or wife during marriage, except that which is the separate property of either, is the community property of the husband and wife. Article 4619, Vernon's Texas Civil Statutes, Annotated. As to community property the rights of husband and wife are equal, i. e., title to such property is one-half in the husband and one-half in the wife, and that is so even though the legal title may be vested in either the husband or the wife.[1]

■■ It is a well established rule of law in Texas that all property acquired after and during marriage, whether in the name of both spouses or in the name of one spouse is presumed to be community property, and the burden of proof is on the one asserting the separate character of the property to prove otherwise. Wilson v. Wilson, 145 Tex. 607, 201 S.W. 2d 226; Burke v. Burke, Tex.Civ.App., 309 S.W.2d 247 (No writ history); and Duncan v. United States, 5 Cir., 247 F.2d 845. Where a husband or wife permits his or her separate property to be so commingled with community property that it cannot be identified such separate property becomes community property. Smith v. Buss, 135 Tex. 566, 144 S.W.2d 529; Taylor v. Suloch Oil Co., Tex.Civ. App., 141 S.W.2d 657 (Writ of Error dismissed—judgment correct); Duncan v. United States, supra; and Phillips v. Vitemb, 5 Cir., 235 F.2d 11.

■■ Unaccrued royalty in an oil and gas mineral estate has a well defined meaning in the oil and gas industry and amounts to an interest in land and therefore is real property. Waggoner Estate v. Wichita County, 273 U.S. 113, 47 S.Ct.

271, 71 L.Ed. 566; State National Bank of Corpus Christi v. Morgan, 135 Tex. 509, 143 S.W.2d 757; Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741, and 31-A Tex.Jur.Sec. 478, p. 822. Although rents and revenues from the separate property of a spouse are community property, income from production of oil or gas by virtue of a royalty interest in an oil and gas mineral estate which is the separate property of a spouse remains the separate property of that spouse. Commissioner of Internal Revenue v. Wilson, 5 Cir., 76 F.2d 766; Norris v. Vaughan, 152 Tex. 491, 260 S.W.2d 676. If property is purchased by a spouse during marriage and the entire consideration is paid out of the separate estate of said spouse, the property purchased is the separate property of said spouse. Price v. Service Bureau, Tex. Civ.App., 165 S.W.2d 794 (Writ of Error refused); Wells v. Hiskett, Tex.Civ. App., 288 S.W.2d 257 (Writ of Error refused, N.R.E.); and Duncan v. United States, supra.

The property rights, if any, of Mr. and Mrs. Hughes to the properties standing in the name of both or either of them at the times of the divorce proceedings in question are governed and controlled by the principles of law set forth in the three paragraphs next preceding. As above indicated, Mrs. Hughes in each of the divorce actions, insofar as property rights were concerned, sought a judgment for one-half of the community property of Mr. Hughes and herself and no more. What she sought she, under the community property laws of Texas, owned. Mr. Hughes made no contention that Mrs. Hughes was not entitled to her interest in the community property. The controversy as to property rights arose because Mrs. Hughes contended that most, if not all, of the property acquired by Mr. Hughes after his marriage to her was community property. As to this contention Mrs. Hughes had the benefit of the presumption that all property acquired by husband and wife, or either of

1. 23 Tex.Jur., Secs. 80 and 81, pp. 101–103.

them, during marriage is community property. Mr. Hughes contended, and correctly so, that most of the property acquired by him subsequent to the marriage was his separate property, said property having been purchased by Mr. Hughes with his separate funds. As to that contention Mr. Hughes had the burden of proving that said property acquired after marriage was his separate property, and it was in preparation to meet that burden that he incurred the attorneys' fees and related expenses that have been allocated to the property rights issue as hereinabove pointed out.

Article 4638, Vernon's Texas Civil Statutes, Annotated, provides as follows:

"The court pronouncing a decree of divorce shall also decree and order a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any. Nothing herein shall be construed to compel either party to divest himself or herself of the title to real estate."

The provisions of this article with reference to the court dividing the estate of the parties are mandatory, but, insofar as real estate is concerned, the court can only divide or partition the community property and cannot under any circumstances divest a party of title to real estate that is the separate property of said party. Hailey v. Hailey, Tex., 331 S.W.2d 299.

Mrs. Hughes' contention that most, if not all, of the property acquired by Mr. Hughes subsequent to their marriage was community property and Mr. Hughes' contention that said property was his separate property had the effect of putting at issue title to at least a one-half interest in all of the property, real and personal, acquired by Mr. Hughes subsequent to the marriage which he contended was his separate property. Had either of the divorce actions gone to final judgment, the court necessarily would have had to have determined such question of title.

It is well established that expenditures, including attorneys' fees and related expenses, made in either acquiring or defending title to property are capital expenditures and are not deductible for income tax purposes. Jones' Estate v. Commissioner of Internal Revenue, 5 Cir., 127 F.2d 231; Louisiana Land & Exploration Co. v. Commissioner of Internal Revenue, 5 Cir., 161 F.2d 842, and Shipp v. Commissioner of Internal Revenue, 9 Cir., 217 F.2d 401. This rule is applicable to expenses incurred by the husband in a divorce suit in connection with resisting the wife's claim that there was community property when the husband contended that none of the property standing in his name was community property. Harris v. United States, 9 Cir., 275 F.2d 238.

Under the facts in this case and in light of the authorities cited in the paragraph next above, I find and conclude that the attorneys' fees and related expenses incurred by Mr. Hughes and allocated to the property rights issue involved in the divorce actions, as above pointed out, were expenditures incurred in defending title to his separate property and were not expenses incurred for the production or collection of income or for the management or conservation of property held for the production of income within the meaning of Section 212 of the Internal Revenue Code of 1954. In light of this finding and conclusion it follows that the Commissioner correctly disallowed Plaintiffs' deductions of such attorneys' fees and related expenses and correctly assessed the additional taxes that Plaintiffs were required to pay for the years in question and which form the basis of this action.

The Plaintiffs, in support of their contention that the attorneys' fees and related expenses, above referred to, were necessary expenses incurred for the production or collection of income or for the management or conservation of property within the meaning of said Section 212 of the Internal Revenue Code of 1954, rely on such cases as Owens v. Commissioner of Internal Revenue, 5

Cir., 273 F.2d 251; Bowers v. Commissioner of Internal Revenue, 6 Cir., 243 F.2d 904; and Baer v. Commissioner of Internal Revenue, 8 Cir., 196 F.2d 646. The instant case is distinguishable from each of those cases. In neither of the cases was the question of title to property standing in the name of the husband involved as was the situation in the instant case. Furthermore in each of those cases the property rights question, concerning which the attorneys' fees that were allowed to be deducted were expended, was not one of liability vel non of the husband to the wife but concerned the manner in which such liability might be met so as to leave income producing property in the control of the husband.

In Baer the taxpayer was confronted with a situation whereby his wife's demands for alimony, which she was entitled to in case the divorce was granted, were so large that to meet said demands he would have had to sell certain income producing properties held by him, thus threatening destruction to a considerable extent of his capacity to earn income. The attorneys' fees and expenses that were allowed to be deducted were expended by Mr. Baer for services rendered by his attorneys in connection with negotiations as to the payment of alimony to Mrs. Baer in such a manner and amount that Mr. Baer would not have to sell his income producing property. Under those circumstances the court concluded that the attorneys' fees and expenses so incurred were necessary expenses incurred for the conservation or maintenance of property held for the production of income within the meaning of the Internal Revenue Code.

In Bowers, like in Baer, it was held that attorneys' fees paid by a taxpayer to his attorneys as a result of a divorce proceeding for services rendered in adjusting a property settlement between the taxpayer and his wife in such a manner as to prevent the taxpayer from having to be deprived of his income producing property were expenses incurred for the conservation of property held for the production of income and were deductible.

In Owens, which was a Texas case, Owens was allowed to deduct attorneys' fees paid attorneys for services rendered in inducing his wife to accept a property settlement agreement in a divorce action under the terms of which a substantial interest in a lumber company owned by Owens and his wife as community property was to remain in Owens and the wife was to receive a certain amount of cash and other property as her part. All of the property owned by Mr. and Mrs. Owens was community property. The lumber company was a substantial business and constituted Mr. Owens' primary source of income. There was no contention made by Mr. and Mrs. Owens, or either of them, that he or she owned separate property.

Judgment will be entered to the effect that Plaintiffs take nothing and taxing costs against them.

As provided for by Rule 52, F.R.Civ.P., 28 U.S.C.A., this Memorandum Decision will constitute the Findings of Fact and Conclusions of Law herein.