898 F.2d 154
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NEW HORIZONS INC., Plaintiff-Appellee, Cross-Appellant,
v.
METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY,
Defendant-Appellee, Cross-Appellee.
 No. 89-5253, 89-5322.
 United States Court of Appeals, Sixth Circuit.
 March 16, 1990.
 
 Before KEITH and KRUPANSKY, Circuit Judges, and ANNA DIGGS TAYLOR, District Judge*.
 PER CURIAM:
 
 
 1
 Defendant Metropolitan Government of Nashville and Davidson County ("Metropolitan Government") appeals from the district court's January 26, 1989 order permanently enjoining it from enforcing a zoning ordinance against plaintiff New Horizons, Inc. ("New Horizons"). For the foregoing reasons, we AFFIRM the judgment of the district court granting the permanent injunction on the state law issue.
 
 I.
 
 2
 New Horizons is a private, non-profit corporation that provides services to mentally retarded citizens in Nashville, Tennessee. In the fall of 1987, New Horizons purchased the Foxwood Lane property, located in Davidson County. Under the Tennessee Department of Mental Health and Mental Retardation's Medicaid Waiver program, New Horizons planned to use this property as the site for two residential group homes for mentally retarded citizens. Each home was to have eight residents plus the necessary supervisory staff.
 
 
 3
 New Horizons applied to the city for building permits to construct both homes. Prior to the filing of the complaint, one of the group homes had been built and has been operating since July 1988. This litigation focuses on the second group home.
 
 
 4
 New Horizons applied to Metropolitan Government for a construction permit to build the second group home. Metropolitan Government denied the application on the basis that the second group home would violate section 103.313(c) of the Metropolitan Government of Nashville and Davidson County Zoning Ordinance (hereinafter Metropolitan Code).[1]
 
 
 5
 On October 13, 1988 New Horizons filed its complaint and motion for a preliminary injunction. It claimed that by refusing to issue a permit for the second group home, the city discriminated against mentally retarded citizens in violation of the Equal Protection Clause of the fourteenth amendment and section 504 of the Rehabilitation Act of 1973. New Horizons also argued that Metropolitan Government's zoning ordinance contravenes Tennessee state law designed to prevent housing discrimination against the handicapped.
 
 
 6
 In its January 26, 1989 memorandum opinion and order, the district court denied New Horizons' constitutional claims and granted its motion for a preliminary injunction finding that Metropolitan Code section 103.313(c) conflicted with Tennessee state law. The district court treated New Horizons' preliminary injunction as a permanent injunction, and entered a final judgment enjoining Metropolitan Government from enforcing section 103.313(c) against New Horizons. On March 10, 1989, New Horizons filed a timely appeal on the federal constitutional claims, and on February 24, 1989 Metropolitan Government cross-appealed on the permanent injunction based on the state claim.
 
 
 7
 At oral argument, counsel for both parties announced that the second group home had been built and is presently housing eight mentally retarded citizens.
 
 II.
 
 8
 Metropolitan Government contends that section 103.313(c) of the Metropolitan Code is not in conflict with Tennessee law and therefore is a valid exercise of its zoning power because state law does not preempt the power of local governments to adopt zoning regulations that are consistent with purposes behind the state law. We find this argument meritless, as the Tennessee statutes plainly favor New Horizons.
 
 
 9
 Section 103.313(c) of the Metropolitan Code provides in pertinent part:
 
 
 10
 103.313 Special conditions for family and group care.
 
 
 11
 (c) No more than one of either a family care or group care community facility may be permitted on a single block having residential ... zone classification or situated on any opposing block faces having a residential ... zone classification. Other criteria may be used to avoid a concentration of such facilities.
 
 
 12
 For zoning purposes, Sec. 13.51(j) of the Metropolitan Code provides that the homes proposed by New Horizons are classified as "group care community facilities."[2] Foxwood Lane is in an R-10 residential zoning district.[3] Group homes are permitted in this residential district only as a "conditional use"; they are subject to approval by the Metropolitan Board of Zoning Appeals and must satisfy certain conditions before a permit is issued.
 
 
 13
 Sections 13-24-101(a) and 13-24-102 of the Tennessee Code Annotated provides:
 
 
 14
 13-24-101. Purpose--Meaning of 'mentally handicapped'.
 
 
 15
 (a) It is the purpose of this chapter to remove any zoning obstacles which prevent mentally retarded, mentally handicapped or physically handicapped persons from living in normal residential surroundings.
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 13-24-102. Home in which mentally retarded, mentally handicapped or physically handicapped persons reside classified as single family residence.
 
 
 19
 For the purposes of any zoning law in Tennessee, the classification 'single family residence' includes any home in which eight (8) or fewer unrelated mentally retarded, mentally handicapped or physically handicapped persons reside, and may include two (2) additional persons acting as houseparents or guardians, who need not be related to each other or to any of the mentally retarded, mentally handicapped or physically handicapped persons residing in the home.
 
 
 20
 Tenn.Code Ann. Secs. 13-24-101(a), 13-24-102 (emphasis added). Furthermore, section 13-24-103 states that "[t]his chapter takes precedence over any provision in any zoning law or ordinance in Tennessee to the contrary." Therefore, this conflict centers on the terms of the Metropolitan and Tennessee Codes.
 
 
 21
 For zoning purposes, Tennessee law requires that homes for the mentally retarded, like New Horizons' second group home, are treated as "single family residences." See Tenn.Code Ann. Sec. 13-24-102. The Metropolitan Code, contradicts this. See Metropolitan Code Sec. 103.313(c). Furthermore, Tennessee law takes precedence over any provision in the Metropolitan Code to the contrary. See Tenn.Code. Ann. Sec. 13-24-103. These statutes could not be worded any plainer, and we agree with the district court that the basic requirements for an injunction have been met. New Horizons, Inc. v. Metropolitan Government of Nashville and Davidson County, No. 3-88-0863, slip op. at 14-16 (D.Tenn. Jan. 26, 1989). Moreover, given that the second group home has been built and is presently in operation, it would be unconscionable to evict these retarded individuals from their home.
 
 
 22
 The Supreme Court has consistently held that state issues should be decided first where these claims are dispositive and the federal claims need not be reached. Hagans v. Lavine, 415 U.S. 528, 546-47 (1974) quoting Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 193 (1909). See also Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 117 (1984) ("[A] federal court may resolve a case solely on the basis of a pendent state-law claim ... and that in fact the court usually should do so in order to avoid federal constitutional questions."); Ashwander v. TVA, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only on the latter."). See, e.g., Hillsborough v. Cromwell, 326 U.S. 620, 629-30 (1946); United Fuel Gas Co. v. Railroad Com. of Kentucky, 278 U.S. 300-308 (1929); Waggoner Estate v. Wichita County, 273 U.S. 113, 116-19 (1927); Risty v. Chicago, R.I. & P.R. Co., 270 U.S. 378-87 (1926). We find that the present case fits under the rubric of Siler and its progeny. The state law claims are dispositive. Therefore, we will not address the federal claims and thus dispose of this case on the nonfederal ground.[4]
 
 
 23
 For the foregoing reasons, we AFFIRM the judgment of the district court in granting the permanent injunction against Metropolitan Government.
 
 
 
 *
 The Honorable Anna Diggs Taylor, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 See discussion infra p. 3
 
 
 [2]
 A group care facility "includes activities providing permanent and/or transient residential services for seven (7) or more unrelated individuals who are handicapped, aged or disabled (excluding delinquent minors, the criminally dangerous, and the psychotic) or in need of adult supervision in accordance with their individual needs." Metropolitan Code Sec. 13.51(j)
 
 
 [3]
 The Metropolitan Code defines an R-10 district as a "medium density" residential district; "generally the residential development will consist of single- and two-family detached dwelling structures." Metropolitan Code Sec. 21.14
 
 
 [4]
 Given the authority cited above, the district court could have decided on the nonfederal ground without reaching the federal constitutional issues