**WACO–TEX MATERIALS CO. et al. v.**
**LEE et ux.**

No. 2785.

Court of Civil Appeals of Texas.
Tenth District.
Waco.

April 22, 1948.

Rehearing Denied May 13, 1948.

Richey, Sheehy & Teeling, of Waco, for appellants.

C. C. Jopling, of LaGrange, and R. L. Henderson, of Waco, for appellees.

TIREY, Justice.

This is a suit to recover compensation alleged to be due W. E. Lee for his services in pointing out to appellants certain lands containing deposits of sand and gravel in commercial quantities available for leasing. Defendants seasonably filed motion for peremptory instruction and also motion for judgment notwithstanding the verdict of the jury, which motions were overruled. The plaintiffs filed motion for judgment on the verdict of the jury, which the court granted, and defendants have appealed.

Plaintiffs grounded their cause of action on an oral contract and alleged substantially that defendants were informed that W. E. Lee, one of the plaintiffs, had knowledge of tracts of land in the vicinity of LaGrange that contained commercial deposits of sand and gravel. Defendants sought such information of Lee and agreed that if Lee would point out such tract or tracts of land, defendants would make the usual and ordinary tests and if said land contained sand and gravel in the quantities and quality desired by defendants and if defendants were successful in obtaining a gravel lease upon such tract that was satisfactory to them, the defendants would pay plaintiffs "a bonus or royalty or compensation for such information as follows: 1. The sum of two cents per cubic yard for all screened or washed gravel. 2. The sum of two cents per cubic yard for pitrun gravel. 3. The sum of four and one-half cents per cubic yard for sand. 4. The sum of one cent per cubic yard for all sand or gravel moved over a proposed railway track to be erected along the west line of the property leased." That after Lee agreed with defendants upon said compensation he pointed out two tracts of land to defendants' duly authorized agent; that defendants made such tests as were satisfactory to them; that

defendants were successful in obtaining the kind and character of leases on each of said tracts satisfactory to them; that one tract was the Richards tract and the other the Ehlers tract, and that said tracts adjoined each other, and that said gravel deposit was a continuation from one tract to the other. It was alleged that defendants paid, according to the contract, the sum due Lee for the sand and gravel mined from the Richards tract, but failed and refused to pay plaintiffs for the sum due according to the terms of the contract for the sand and gravel mined from the Ehlers tract and the one cent per cubic yard for the sand and gravel moved over the spur track. Defendants seasonably raised by exception the points that the plaintiffs' pleading contravened our statute of frauds because it was an oral contract relating to an interest in land and was therefore within the terms of that statute, and that plaintiffs were seeking to recover compensation for Lee's acts alleged to have been performed in negotiating a lease on real estate, and that such acts constituted W. E. Lee a real estate dealer or salesman, and that since defendants did not allege that Lee was a duly licensed real estate dealer or salesman at the time or at the accrual of his alleged cause of action plaintiffs could not recover as a matter of law by virtue of the provisions of Art. 3995, and Art. 6573a, Vernon's Ann.Civ.Stats.

The jury found substantially that (1) defendants agreed to pay plaintiffs two cents per cubic yard for gravel and four and one-half cents per cubic yard for all sand removed by defendants from any gravel or sand deposits pointed out to defendants by plaintiff W. E. Lee; (2) that defendants had the railroad switch constructed on the Ehlers tract to avoid paying plaintiff one cent per cubic yard for all gravel and sand moved over said switch track; (3) that the oral agreement between plaintiffs and defendants could have been performed within one year. The court in its judgment further found in effect that the quantities of sand and gravel removed by plaintiffs from the Ehlers tract was without dispute and (under the verdict of the jury) plaintiffs were entitled to recover for such sand and

gravel removed from the Ehlers tract the sum of $2857.10, and that the quantities of sand and gravel moved over the railroad switch constructed on the Ehlers tract was without dispute and that plaintiffs were entitled to recover the further sum of $3052.52, and entered judgment in behalf of plaintiffs for the sum of $5909.62, with interest and costs. The above calculations are not assailed.

Points 3, 4, 5 and 6 assail the judgment substantially on the theory that since the contract of plaintiffs was verbal only and sought to burden the land leased with an overriding royalty for the service rendered by W. E. Lee in pointing out sand and gravel deposits to defendants contravened our statute of frauds, Art. 3995, Vernon's Ann.Civ.Stats., and since plaintiffs did not allege that W. E. Lee was a duly licensed real estate dealer or salesman (and the proof was without dispute that he was not) and had complied with Art. 6573a, Vernon's Ann.Civ.Stats., he could not recover for services rendered because of his failure to show a compliance with the foregoing statutes.

 ' The first major question in this case is: Does the plaintiffs' alleged cause of action for compensation for the sand and gravel removed from the Ehlers tract come within our statute of frauds? We think not.

In Dashko v. Friedman, Tex.Civ.App., 59 S.W.2d 203, 204, the exact question was before the court, except that the subject matter of the suit was oil and gas to be severed from the land instead of gravel. The court in passing upon the question as to whether or not the statute of frauds was applicable said: "The question presented by this appeal for determination is whether or not the subject-matter of the contract, alleged in plaintiff's petition as entered into between plaintiff and defendant, is personal property or real estate. If it was the intention of the plaintiff and defendant, as evidenced by the terms of the oral contract between them, to provide for a conveyance by the defendant to plaintiff of an interest in the mineral in place, then the contract would be within the statute of frauds. If it was their in-

tention to stipulate for an assignment thereof, and if terms of the contract so dealt with the minerals only, after they were produced, then the contract would not be prohibited by the statute of frauds. We are of the opinion that the oral contract as alleged in plaintiff's petition whereby it is alleged that defendant agreed to transfer and assign to plaintiff '¾₆ of the oil and gas produced and saved from said land, as, if, and when produced, and in that event only,' clearly evidences the intention of the parties to, and that they thereby did, contract with relation to the oil and after it should be produced and saved, and in that event only, and not as a mineral interest in the land. The fact that the oil and gas to be received by appellant under the contract is designated as an 'overruling royalty' does not make it real estate, or prohibit it from being personal property. It merely denotes its freedom from the burden of production expenses. The contract alleged between the plaintiff and defendant did not undertake to deal with the mineral in fee; but undertook to deal with it, as, if, and when (after) produced (taken out of and severed from the land), and in that event only; that is, after it became personal property, and is not within the statute of frauds."

We think the contract pleaded by the plaintiffs and the evidence adduced brings their suit for compensation for sand and gravel removed from the Ehlers tract within the above rule. It was therefore a matter subject to contract by parol and is not within our statute of frauds. This same rule was applied in Sutton v. Wright & Sanders, Tex.Civ.App., 280 S.W. 908, and the subject matter in that suit relates to the production and severance of sand and gravel from the soil. The case of Dashko v. Friedman, supra, was cited with approval by the Commission of Appeals in Jones v. O'Brien, Tex.Com.App., 251 S.W. 208 (judgment of the court adopted). Our courts have not departed from this rule. See Hager v. Stakes, 116 Tex. 453, 294 S.W. 835 (S.Ct.), point 1. Since the plaintiffs in this case alleged (and the proof showed) that they owed no duty to defendants with reference to aiding or assisting them in obtaining the lease on

the Ehlers tract, and that their compensation was to come to them if and when defendants had leased and severed and removed the sand and gravel from the tract, we think that this case comes squarely within the pronouncements of the foregoing decisions and is not within the statute of frauds. It follows that since the plaintiffs' contract with reference to the Ehlers tract relates to personalty only that Art. 6573a, Vernon's Ann.Civ.Stats., commonly known as the Real Estate Dealer's License Act, is not applicable to plaintiffs' suit for compensation for the sand and gravel removed from the Ehlers tract.

Point 2 assails the judgment of the court in granting judgment in favor of plaintiffs for one cent per cubic yard, or $3052.52, for the sand and gravel moved over the railroad spur located on the Ehlers tract. We sustain this contention.

Viewing the evidence in the light most favorable to plaintiffs, we think it is without dispute that after W. E. Lee had made his contract with defendants with reference to the compensation he was to receive for pointing out land having commercial deposits of sand and gravel, he further agreed orally to aid and assist them in obtaining the lease on the Richards tract. Pursuant to this agreement with the defendants, he negotiated in his own name a lease on the Richards tract, providing for the payment for sand and gravel produced as previously agreed to with defendants, which lease, among other things, provided: "Lessee shall have a (20) foot right-of-way along the west line of the land herein described for the purpose of erecting a railway track and said right-of-way to be built as near parallel with the west line of said tract as possible, consistent with right-of-way engineering. The lessor shall be paid at the rate of one (1¢) cent per cubic yard for all gravel or sand moved over said railway track off of any other land." This instrument was executed between Richards, the land owner, and Lee on the 11th day of October, 1944. This lease granted to the lessee the right of assignment. On the following day, Lee executed a written assignment of said lease to defendants and the

consideration recited therein was as follows: "1. The sum of two cents per cubic yard for all screened or washed gravel. 2. The sum of two cents per cubic yard for pitrun gravel. 3. The sum of four and one-half cents per cubic yard for sand. 4. The sum of one (1¢) cent per cubic yard for all sand or gravel moved over a proposed railway track to be erected along the west line of the leased land, right-of-way of said railway to be built as near parallel with the west line of same as possible, consistent with right-of-way engineering, reference being here made to paragraph 2 on page 6 of the original lease for all pertinent purposes." This assignment bound the defendants to pay the sums to accrue to Marie S. Lee, wife of W. E. Lee, and further bound the defendants to pay Mrs. Lee a minimum royalty of $50.00 per month beginning on the 11th of November, 1944. It specified that if the royalty provided for did not amount to as much as $50.00, the assignee obligated himself to make up the deficiency each month. It also provided that if the royalty shall amount to more than $50.00 per month, then Marie S. Lee shall receive the amount of royalty instead of the $50.00 per month. Mr. Lee testified, in part, as follows:

"Q. Mr. Lee, at the time you leased that land, who were you acting for? A. Mr. Young, for the Waco-Tex Material Company.

"Q. Was it your intention for that lease to be operated for your benefit? A. No, sir.

"Q. You were just aiding and assisting them in getting a lease on the Richards tract? A. Yes, sir, that is all.

"Q. What agreement with Mr. Young did. you have with reference to the Richards lease after you had obtained it? A. Transfer it to him without compensation."

In the case of Gregory v. Roedenbeck, 141 Tex. 543, 174 S.W.2d 585, 588, our Supreme Court, in construing Art. 6573a, aforesaid, said in part: "We further hold that the performance for compensation of one act by a person, in connection with the procurement of a prospect for the sale or purchase of real estate, constitutes such person performing the act a real estate

dealer within the meaning of the Real Estate Dealers' License Act." See Point 5.

■■ Our view is that when Lee agreed with the defendants to act as the undisclosed agent of defendants in procuring the sand and gravel lease and in pursuance of that agreement did obtain the lease in his name on terms satisfactory to his principal and did thereafter assign said lease to his principal according to the terms of his verbal agreement, save and except that he did insert an additional provision for a minimum monthly payment to begin on the 11th of November, 1944, that he thereby merged his oral contract with defendants as to the Richards tract into the terms of his written assignment. Since he aided and assisted his principal in obtaining the sand and gravel lease for a valuable consideration, the terms of which were recited in the assignment, we think that his contract for compensation set out in the assignment for the sand and gravel produced from the Richards lease brought him within the terms and provisions of the Real Estate Dealer's statute aforesaid. Since neither he nor his wife had complied with this statute they could not recover the one cent compensation claimed for sand and gravel moved from the Richards tract over said spur. Our view is that plaintiffs cannot recover the one cent compensation for gravel moved over the spur located on the Ehlers tract for another reason and that is because appellants were not legally bound to build the spur on the Richards tract unless they elected to do so. It is true that defendants had the right to build the "proposed" spur on the Richards tract provided they thought it "consistent with right-of-way engineering," but there is nothing in the Richards lease or the assignment to preclude them from building a spur track on the Ehlers land. Moreover, Lee testified to the effect that his services to the defendant in obtaining the Richards lease was rendered after he had completed his oral contract with them with reference to his compensation and that he did not receive any additional compensation for aiding the defendants in obtaining the Richards lease. Of course, this last statement is in direct conflict with the terms and provisions in the assignment tendered

in evidence by plaintiffs, which provided for the minimum monthly payments to begin November 11, 1944. Lee testified to the effect that defendant could make their own lease contract with the owner of the land on terms satisfactory to them, and that plaintiffs owed defendants no duty to aid and assist them in obtaining the lease, and that plaintiffs were to be paid if and when the lease was made and the sand and gravel severed and removed from the leasehold interest. The defendants were in nowise limited in making such contract as they might deem to their best interests with reference to the production of sand and gravel. It is clear to us that defendants could make such additional contract as they chose to make with reference to the building of the railway spur on the Ehlers tract for the purpose of aiding them in mining the sand and gravel thereon. We think this view is in accord with the position that appellees take in their brief wherein they say: "Appellee does not claim that he has any right under the leases. Had no right to compel or demand defendant to remove any sand or gravel from the premises and does not claim any damages or compensation for failure to remove any other sand or gravel that may yet be on the premises." We think the foregoing statement by appellees as to their legal rights is in conflict with their position to demand damages for breach of the alleged contract to build a switch on the Richards lease. Since the evidence is without dispute that the track was not built on the Richards land but was built on the Ehlers tract, and since there were no pleadings, evidence or finding of the jury to the effect that plaintiffs would be paid one cent per cubic yard for the sand and gravel moved over the spur on the Ehlers track, plaintiffs cannot recover the one cent compensation for sand and gravel moved over the railway track on the Ehlers land.

It follows that the judgment of the trial court in awarding to plaintiffs the sum of $3052.52 for the sand and gravel moved over the spur track must be reversed and rendered. The judgment of the trial court, insofar as it awarded judgment for the plaintiffs in the sum of $2857.10 for sand and gravel mined from the Ehlers tract

is hereby in all things affirmed. The judgment of the trial court in awarding judgment in favor of plaintiffs in the sum of $3052.52 is reversed and rendered and the costs of this appeal are taxed against appellees.

The judgment of the trial court is affirmed in part and reversed and rendered in part.